**DAVID K. BERTAN**
ATTORNEY AT LAW
41 EAST 11TH STREET, 11TH FLOOR
NEW YORK, NEW YORK 10003

(718) 742-1688
E-MAIL: DKB@DAVIDBERTAN.COM

September 15, 2026

*Via ECF*

Hon. Katherine Polk Failla, United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

**Re: USA v. Carlos Omar Felix Gutierrez**
**23-cr-180 (KPF)**

Dear Judge Failla:

Hard times call for hard choices. For Mr. Gutierrez, that hard choice turned into a bad choice, one that he deeply regrets.

Mr. Gutierrez grew up in a hardscrabble world. His family had little money, and he lived under impoverished and primitive conditions. His father was brutally murdered by a violent drug gang when Carlos was only 12. He worked to help support his family, remembering that when he was 7, he helped on his grandparent's farm; he also recalls visiting his father in prison at that age. Throughout his life, he and his family worked simply to maintain a subsistence level life. No luxuries, none of the simple pleasures a boy should enjoy, just work and poverty.

Carlos pleaded guilty to conspiracy to import fentanyl under 21 USC 963 and 960 (b)(2))(F). Under the terms of the plea agreement, Carlos accepted responsibility for his participation in the charged conspiracy. The specific terms of the plea agreement contemplated an offense level of 33, with a criminal history category of I. He faces a mandatory minimum sentence of 5 years and a maximum sentence of 40 years. Under the plea agreement, the

Government and the defendant agree that the applicable advisory guidelines range is 135 to 168 months. According to the Pre-Sentence Report, Probation agrees with that calculation and recommends a sentence of 84 months[1].

Now that the defendant has pleaded guilty, it is this Court's responsibility to determine the proper sentence that is sufficient, but not greater than necessary, to satisfy the aims of sentencing. To start, the Court must review the sentencing factors set forth in 18 USC § 3553.

Under the first section, a sentencing court is obligated to consider the nature and circumstances of the offense, and the defendant's history and characteristics. Under (2), the court must consider the need for the sentence to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to provide deterrence; to protect the public from further crimes of the defendant, and to provide the defendant with any needed rehabilitative programs.

For Carlos, both factors under 18 USC § 3553 (a)(1) show that even the sentence recommended by Probation is excessive. As for the nature and circumstances of the offense, while there is no question the offense is serious, there is also no question that Carlos was not a major player in the conspiracy. He admittedly negotiated drug transactions but did not participate in any violent crimes.

Under the second factor in subsection (a), the history and characteristics of the defendant, the analysis strongly supports mitigation. As noted briefly above, and as detailed in the mitigation report[2], Carlos lived a hard life. His family was poor, his father spent years in jail (one of Carlos' earliest memories was visiting his father in jail when Carlos was only 7), and his uncles and eventually his father were murdered by violent gangs. While this was the worst of his formative experiences, Carlos also suffered from extreme poverty,

[1] The details of the guidelines calculation and Mr. Gutierrez's criminal history category are detailed in the plea agreement. That agreement is a court exhibit, and is also referenced in the Pre-Sentence Report, which agrees with the calculation.
[2] The redacted mitigation report, along with supporting exhibits and letters from family and friends, is submitted as an exhibit. An unredacted copy will be submitted to the Court and Government for filing under seal.

multiple dislocations due to that poverty, and had to work at an early age to help support his family after the loss of his father.

One example of that hardship concerned his two brothers. One brother began losing his eyesight when he was 5, requiring expensive treatments the family could not afford; another brother had foot problems that required special shoes, another expense the family could not afford.

At that point, Carlos' father had already been murdered: his mother began scrambling to earn money. By the time Carlos was 15, he had to drop out of school (he was a good student) in order to work. Odd jobs followed, with Carlos giving his mother whatever he earned. One benefit of the hard life he lived was that it gave him a strong work ethic; as the mitigation report shows, even through his menial job as an apple packager at a warehouse he showed his employers he was deserving of recognition for his efforts.

By the time he was 19, Carlos was helping to support his mother, his two younger brothers (those with medical issues), and an even younger brother who was the issue of a brief relationship between his mother and a drifter. He was also married to Jacqueline Sarabia, with whom he has a son. Jacqueline also has another son, whom Carlos helped to raise during their relationship.

The financial pressures from supporting his family led Carlos to the only sure way he knew to earn money: the drug trade. As noted in the mitigation report, Carlos' father was involved in the marijuana trade; as the financial pressures on him increased, Carlos turned to the drug trade to help. Those were the hard times, and that was the hard, and wrong, choice.

Despite his turn to crime, Carlos was and still is a loved and respected member of his family. His wife writes that he was a devoted Christian who regularly attended church; she also describes him as noble and kind-hearted, always willing to help others. Her description is corroborated by Carlos' own history of hard work to help his family.

His mother echoes these sentiments, noting how he has worked hard to help support his family, and how dedicated he was to his work. Both his mother and his wife write that Carlos has their support after his release, and

his mother even says she will help him get a job at her company after his release.

His teacher, Eligio Ortega Alvarado, writes that Carlos always had strong principles and well-established values. Carlos was a serious young man but was also friendly and supportive with his classmates and community. His junior high school teacher, Oscar Omar Dorel Argomedo, echoes those sentiments, also noting his hard work in support of his family.

Carlos' uncle, Erick Eduardo G.Z., discusses Carlos' respectful nature, and his hard work in supporting his family. Aunt Jazmin similarly mentions his respectful attitude towards his teachers and classmates. She also describes how grateful Carlos was towards his maternal grandparents, who helped raise and support him when he was younger.

Justina Nunez, a childhood friend, writes how when Carlos was being raised by his grandparents, he was helping tending livestock. Justina describes Carlos as a well-behaved and friendly child, respectful towards others.

To a person, each of the letter writers describes Carlos as respectful and hard working. They all end their letters by requesting some leniency towards a man they know to be a good son, father, brother, and husband.

Another note to consider is Carlos' behavior while incarcerated. He has had no disciplinary history while in jail here in the United States. In addition, as the records from the Mexican penitentiary show, he had consistent "good behavior" reports during his term there.

The remaining 3553 (a) factors to be considered are the seriousness of the offense, promoting respect for the law, providing just punishment, providing deterrence, protecting the public from any future crimes of the defendant, and providing the defendant with any needed rehabilitation. In addition, a sentencing court must consider sentencing disparity, both in the instant case and in general.

As with the first set of factors, these factors also support a substantial variance for Carlos. While the offense is quite serious, Carlos' involvement in the overall conspiracy is significantly less than his co-defendants. In

addition, his acceptance of responsibility and his letter to the court shows he understands the overall seriousness of the offense. Second, a sentence of 5 years, the minimum by statute, would be sufficient punishment for his involvement, given the strong mitigating factors demonstrated above. Both specific deterrence and protecting the public are not issues in this case, as Carlos will be removed from the United States as soon as he completes his sentence. In terms of general deterrence, a sentence of 5 years is a substantial term of imprisonment and would act as a deterrent to anyone thinking of participating in a drug importation conspiracy.

The last factor under 3553 (a)(2), rehabilitation, strongly supports the requested minimum sentence. As shown by the certificates from the Essex County jail, Carlos has tried to take advantage of educational opportunities offered to him. While he has a language barrier, he has nonetheless completed courses in budgeting, tech knowledge, and career choices. Similarly, his work ethic and remorse show that he has already undergone his own program of self-rehabilitation. As his family writes, after his release he will continue to be the support for his family and will go back to his old ways of working legitimate jobs.

Further, Carlos has endured constant lockdowns and canceled visitations since his transport to the United States. He has had several requests for medical treatment ignored, endured constant lockdowns, and, because he was brought here from Columbia, has not had any in-person visits other than counsel for the past 3 ½ years. Although jail is not meant to be comfortable, these conditions merit some consideration in determining the appropriate sentence.

One final point for this Court's consideration concerns Carlos' son, Omar Felix Gallardo. According to school records, 5-year-old Omar was having significant difficulties adjusting to school after Carlos was arrested and brought to the United States. Omar is verbally uncommunicative and instead communicates through gestures and pointing. He does not socialize while in school and is an observer, not a participant, during peer play. His schoolwork is satisfactory, mainly from imitation, and he can focus his attention if interested in the activity being presented. It is apparent that Omar is having issues adjusting to his father's absence.

Under USSG § 5H1.6, while family ties and responsibilities are not ordinarily relevant in determining a sentence, where those family circumstances are deemed extraordinary, a sentencing court can consider them in determining an appropriate sentence. In *United States v. White*, 301 F. Supp. 2d 289 (SDNY 2004), Judge Chin determined that under 5H1.6, he had the discretion to impose a below-guidelines sentence. As he noted, when the imposition of a guidelines sentence will result in extraordinary hardship to a defendant's family, the defendant's family circumstances can be considered a mitigation factor in deciding a sentence. There, Judge Chin considered three questions in determining whether family circumstances warrant a downward departure: does the court have the power to depart; should the court exercise its discretion to do so; and, to what extent should the court depart?

The first question is simple: this Court undoubtedly has the power to impose a lower sentence than provided by the Guidelines[3]. Under 5H1.6, the Sentencing Commission gave sentencing courts the discretion to consider family circumstances in determining whether a below-guidelines sentence is appropriate.

The real question here, given the court's latitude in imposing a non-guidelines sentence, is whether Carlos' family circumstances support the requested variance.

As discussed above, there are two reasons for a variance here. The first is financial. Carlos is the primary support for his wife and children: he also provides significant support to his mother and brothers. Two brothers have medical conditions that require expensive treatment. For several years, Carlos helped to provide significant financial support through his hard work.

The second reason for a variance under 5H1.6 concerns Omar. The school report shows that Omar is suffering from some developmental issues:

---

[3] It is important to note that *White*, *supra*, was decided the year before the Supreme Court's decision in *United States v. Booker*, 543 US 220 (2005). At the time *White* was decided, the Guidelines were still mandatory, and thus the only way to impose a lower sentence was to formally find a basis for a departure. Here, given the fact that the guidelines are now advisory, the question becomes whether and to what extent a variance should be considered.

one clear explanation for this is the loss of his father. While this issue alone might not be a reason for the requested variance, when coupled with the mitigation factors discussed above, and the need for Carlos to return to his family to support them financially, Omar's condition is an additional factor for this Court to consider in determining the extent of a sentencing variance.

Carlos Gutierrez spent his life going through hard times. Nothing ever got easier for him: instead, life, gangsters, family members murdered, and illnesses simply made things harder. He made hard choices to support his family and now recognizes that those choices were wrong. He has accepted responsibility and shows true remorse for his conduct. His own letter to this Court, along with other letters from family, friends, and teachers, shows that he is more than capable of working hard at legitimate jobs to take care of his family. All we ask is that this Court impose a sentence of 5 years. This will allow him to accept the appropriate punishment, serve his time, and then return to his family in Mexico to re-start his life as a hard-working and productive person.

Thank you for your consideration in this matter.

Very truly yours,

David K. Bertan
Jacqueline Cistaro
Counsel for Carlos Gutierrez

cc: